UNITED STATES DISTRICT COURT
DISTRICT OF SOUTH CAROLINA
FLORENCE DIVISION

| | | |
|---|---|---|
| PRESTON DEVON JOHNSON, # 268169,<br>a/k/a ABDALLA MUSTAFA, | ) | C/A No.  4:08-3840-CMC-TER |
| | ) | |
| Petitioner, | ) | |
| vs | ) | **REPORT AND RECOMMENDATION** |
| | ) | |
| MICHAEL MCCALL and HENRY<br>MCMASTER, | ) | |
| | ) | |
| | ) | |
| Respondents. | ) | |
| | ) | |

## I.    INTRODUCTION

Petitioner is an inmate in the custody of the South Carolina Department of Corrections (SCDC). Petitioner, appearing pro se, filed his petition for a  writ of habeas corpus pursuant to 28 U.S.C. § 2254[1] on November 24, 2008.  Respondent filed a Motion for Summary Judgment (Document # 17) on April 3, 2009, along with a Return and supporting Memorandum.   The undersigned issued an order pursuant to  Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), advising Petitioner of the motion for summary judgment procedure and the possible consequences if he failed to file a response.  Petitioner filed a Motion for Extension of Time to respond to the Motion for Summary Judgment, which the undersigned granted, giving Petitioner until June 11, 2009, to file a Response.  Petitioner filed a Response (Document # 26) in opposition to the Motion for Summary Judgment on June 15, 2009.

---

[1] This habeas corpus case was automatically referred to the undersigned United States Magistrate Judge pursuant to the provisions of 28 U.S.C. § 636(b)(1)(B) and Local Rule 73.02, DSC.  Because this is a dispositive motion, this report and recommendation is entered for review by the district judge.

## II. PROCEDURAL HISTORY

The procedural history as set out by Respondent has not been seriously disputed by Petitioner. Therefore, the undisputed procedural history as stated by Respondent is set forth herein. Petitioner is presently confined in the Perry Correctional Institution, of the South Carolina Department of Corrections (SCDC), as the result of his Pickens County, South Carolina, conviction and sentence for murder.

### A. Petitioner's Kidnapping Conviction

The Pickens County Grand Jury indicted Petitioner at the July 2000 term of court for kidnapping (00-GS-39-770). 2003 App. pp. 74-75. Richard Warder, Esquire, represented him on this charge. On July 26, 2000, he pleaded guilty to this charge before the Honorable Joseph J. Watson; and Judge Watson sentenced him to ten years imprisonment. 2003 App. pp. 3-19; 68; 70-72. Petitioner did not appeal his conviction or sentence.

However, he filed a pro se Post-Conviction Relief (PCR) Application (2001-CP-39-711) on August 3, 2001. He alleged the following grounds for relief in his Application:

> 1. Ineffective assistance of counsel [because of counsel's] failure to investigate viable (sic) evidence.
> 2. Ineffective assistance of counsel [because of counsel's] failure to [advise or] request a lesser sentence.
> 3. Ineffective assistance of counsel [because of counsel's] failure to produce argument for defense.

2003 App. pp. 21-25. The State filed its Return and Motion to Dismiss on May 17, 2001. The State argued that the Application was barred by the PCR statute of limitations, S.C. Code Ann. § 17-27-45(A) (Supp. 2001). 2003 App. pp. 26-28.

The State's motion to dismiss was ultimately denied; and the Honorable John C. Few held

an evidentiary hearing into the matter on October 28, 2002, at the Pickens County Courthouse. Cheree Gillespie, Esquire, represented Petitioner. Assistant Attorney General Bryan Dukes represented the State. Petitioner testified on his own behalf, and he presented the testimony of trial counsel, Mr. Warder. 2003 App. pp. 29-61. On March 20, 2003, Judge Few filed an Order of Dismissal, in which he denied relief and dismissed the Application with prejudice. 2003 App. pp. 63-67; see also 2003 App. p. 69.

Petitioner timely served and filed a notice of appeal. Chief Attorney Daniel T. Stacey, of the South Carolina Office of Appellate Defense represented him in collateral appellate proceedings. On September 25, 2003, Petitioner filed a Petition for Writ of Certiorari. The only Question Presented in the Petition for Writ of Certiorari was stated as follows:

> Whether the PCR court erred when it denied petitioner's motion to continue the case, since he had several witnesses that would have supported his contention that he received ineffective assistance of counsel, and the PCR court thereafter found that petitioner should lose his case because he did not present any evidence, testimonial or otherwise what the testimony of these witnesses would be?

Petition for Writ of Certiorari at p. 2. The State filed a Return to Petition for Writ of Certiorari on October 9, 2003.

The South Carolina Supreme Court filed an Order denying certiorari on March 18, 2004. It sent the Remittitur to the Pickens County Clerk of Court on April 6, 2004.

Petitioner then filed a successive PCR Application with respect to the kidnapping conviction on January 16, 2007. (07-CP-39-0064). The State thereafter filed a Return and Motion to Dismiss on April 2, 2007, arguing that the Application should be summarily dismissed because it was barred by the PCR statute of limitations, S.C. Code Ann. § 17-27-45(A) (Supp. 2001), and because it was successive to the 2001 application.

On May 2, 2007, the Honorable D. Garrison Hill filed a Conditional Order of Dismissal, in which he provisionally granted the motion to dismiss, but Petitioner was given twenty days within which to show cause why a Final Order granting the State's motion should not be filed. Petitioner submitted an "Objection to Conditional Order of Dismissal" dated April 4, 2007. However, Judge Hill filed a Final Order granting the motion to dismiss on July 25, 2007.

### B.    Petitioner's Murder Conviction

The allegations before this Court, however, stem from Petitioner's murder conviction. The Pickens County Grand Jury indicted Petitioner at the April 2001 term of court for murder (2001-GS-39-0600). App. 800-01. Christopher G. Olson, Esquire and C. Nicholas Lavery, Esquire represented him on this charge.

On November 18-21, 2002, he received a jury trial before the Honorable John W. Kittredge. The jury found him guilty as charged; and Judge Kittredge sentenced him to life without parole, to be served consecutively to the sentence he was already serving. App. pp. 1-625; 803-07.

Petitioner timely served and filed a notice of appeal. Joseph L. Savitz, III, of the South Carolina Office of Appellate Defense represented Petitioner on direct appeal to the South Carolina Court of Appeals.

On December 9, 2004, Mr. Savitz filed a Final <u>Anders</u> Brief of Appellant, on Petitioner's behalf and petitioned to be relieved as counsel. The only issue presented for review in the <u>Anders</u> Brief was stated as follows:

> The judge erred in refusing to direct a verdict acquitting Johnson of murder, since the State's circumstantial evidence was too insubstantial to support a conviction for that charge.

Final <u>Anders</u> Brief of Appellant at p. 3. Petitioner filed a pro se "Appellant's Response to <u>Anders</u>

Brief" on January 24, 2005. He raised one issue <u>pro se</u>:

> Appellant contends the trial court denied him a fair trial and equal[] protection of the laws in violation of the South Carolina Constitution Article one section Fourteenth Amendment section one[,] when his motion to be referred to throughout the trial by his Christian name, Preston D. Johnson, instead of Abdullah Qawi Mustafa, his [M]uslim name, was denied.

Response to Anders Brief, p. 1.

On May 13, 2005, the South Carolina Court of Appeals filed an unpublished Opinion, in which it dismissed Petitioner's appeal and granted appellate counsel's motion to be relieved. <u>State v. Preston Devon Johnson</u>, 05-UP-324 (S. C. Ct. App., May 13, 2005). It sent the Remittitur to the Pickens County Clerk of Court on June 14, 2005.

Petitioner filed a pro se Post-Conviction Relief (PCR) Application (05-CP-39-0786) on May 31, 2005. He alleged the following grounds for relief in his Application:

> 1. Ineffective assistance of trial counsel.
> 2. Ineffective assistance of appellate counsel.
> 3. "Denial of fair trial in violation of the due process clause."

App. pp. 627-33. The State filed its Return on August 24, 2005. App. pp. 664-69.

In an amended application dated in May 2006, Petitioner alleged the following grounds for relief:

> 1. Ineffective assistance of trial counsel:
> a. Failed to properly challenge SLED lab analysis.
> b. Failed to have an independent DNA test on various items.
> c. Failed to interview and subpoena witnesses.

App. pp. 634-51. In an Amended Application filed August 17, 2006, Petitioner further alleged that he was also being held in custody unlawfully for the following reason:

> 1. Lack of subject matter jurisdiction.

App. pp. 659-63.

The Honorable Edward W. Miller held an evidentiary hearing into the matter on August 28, 2006 at the Pickens County Courthouse. Petitioner was present at the hearing; and James P. O'Connell, Esquire, represented him. Assistant Attorney General Karen C. Ratigan represented the State. Petitioner testified on his own behalf. He also presented the testimony of trial counsel, Christopher G. Olson, Esquire and C. Nicholas Lavery, Esquire, as well as testimony from Phyllis Gantt Webb. App. pp. 670-771.

On October 13, 2006, Judge Miller filed an Order of Dismissal, in which he denied relief and dismissed the Application, as amended, with prejudice. The Order of Dismissal addressed Petitioner's claims that trial counsel was ineffective because they (1) failed to properly challenge the SLED DNA analysis/report and (2) failed to hire an independent DNA expert; (3) stipulated they would not argue the issue of third party guilt; (4) failed to interview or subpoena several witnesses who knew the victim and those individuals who had given statements to the police; (5) and failed to aggressively cross-examine State's witness, Detective Crooks, because Mr. Olson and the witness are friends. The Order of Dismissal also addressed Petitioner's allegation that the trial judge lacked jurisdiction in this case pursuant to S.C. Code Ann. § 14-5-790 because the indictment supposedly was stamped "true bill" but never went before the Pickens County Grand Jury; and because, pursuant to the statute, the Grand Jury was not convened in April 2001, when the indictment was true billed. Finally, Judge Miller's Order found that "[a]s to any and all allegations that were raised in the application or at the hearing in this matter and not specifically addressed in this Order, this Court finds the Applicant failed to present any evidence regarding such allegations. Accordingly, this Court finds the Applicant waived [them]." App. pp. 773-82.

Petitioner submitted a pro se Notice of Motion of Rule 59E," asking the PCR judge to

reconsider the ruling. App. pp. 784-98. Collateral counsel then filed a Return to and Motion to Reconsider, and Alter Change and or Amend. Among other matters, collateral counsel argued in his motion that "Trial Counsel . . . should have done more, to include a full and complete appraisal of the Discovery material with the Applicant." (See p. 3 of Return to and Motion). Collateral counsel's motion was summarily denied in a form Order filed on January 8, 2007. App. p. 799.

Petitioner timely served and filed a notice of appeal. Assistant Appellate Defender M. Celia Robinson represented him in collateral appellate proceedings. On September 14, 2007, Petitioner filed a Petition for Writ of Certiorari. The two Questions Presented in the Petition for Writ of Certiorari were stated as follows:

> 1. Did the PCR Court err in denying petitioner's motion for authorization of fund for expert assistance and further err in finding that trial counsel did not provide ineffective assistance by failing to obtain and/or present independent expert testing and testimony regarding DNA and laboratory results and analysis relevant to petitioner's innocence and third party guilt?
> 2. Did the PCR Court err in denying the application for relief where trial counsel provided ineffective assistance in failing to present favorable evidence, in failing to investigate, in failing to present the testimony of favorable witnesses, and in agreeing to avoid evidence of third party guilt?

Petition for Writ of Certiorari at p. 2. The State filed a Return to Petition for Writ of Certiorari on November28, 2007.

The South Carolina Supreme Court filed an Order denying certiorari on August 22, 2008. It sent the Remittitur to the Pickens County Clerk of Court on September 9, 2008.

## III.   GROUNDS FOR RELIEF

Petitioner raises the following allegations in his pro se Petition for Writ of Habeas Corpus:

**GROUND ONE**: Applicant's Response to Anders Brief.

   **SUPPORTING FACTS**: The court denied Appellant's motion to refer to

him by only his Christian name and not his Muslim name.
1. The appellant was indicted under his Christian name, Preston Johnson
2. This is his legal name (Abdullah Qawi Mustafa).
3. There are witnesses who refer to him as his middle name, Qawi.
4. He isn't generally known as Preston D. Johnson.

**GROUND TWO**: Ineffective Assistance of Trial Counsel.

> **SUPPORTING FACTS**: Motion hearing before trial where trial counsel agreed with stipulation not to produce or inject evidence of third-party guilt, and the toxicology report cocaine in victims system, and broken crack pipe found at crime scene- no testing done, also cigarette butts which Appellant produce reports and photos at post-conviction hearing.

**GROUND THREE**: Third-Party Guilt.

> **SUPPORTING FACTS**: Trial counsel was not allowed to argue third-party guilt where the State relied heavily on DNA, which did not match - victim had skin under fingernails, did not match Appellate's DNA. DNA found on the inner thigh did not match - trial counsel failed to conduct an independent DNA test of various items.

## IV.    SUMMARY JUDGMENT

The federal court is charged with liberally construing the complaints filed by pro se litigants, to allow them to fully develop potentially meritorious cases. See Cruz v. Beto, 405 U.S. 319 (1972); Haines v. Kerner, 404 U.S. 519 (1972). The court's function, however, is not to decide issues of fact, but to decide whether there is an issue of fact to be tried. The requirement of liberal construction does not mean that the court can ignore a clear failure in the pleadings to allege facts which set forth a federal claim, Weller v. Dep't of Social Servs., 901 F.2d 387 (4th Cir. 1990), nor can the court assume the existence of a genuine issue of material fact where none exists. If none can be shown, the motion should be granted. Fed. R. Civ. P. 56(c).

The movant has the burden of proving that a judgment on the pleadings is appropriate. Once the moving party makes this showing, however, the opposing party must respond to the motion with

"specific facts showing that there is a genuine issue for trial."  The opposing party may not rest on the mere assertions contained in the pleadings.  Fed. R. Civ. P. 56(e);  Celotex v. Catrett, 477 U.S. 317 (1986).

The Federal Rules of Civil Procedure encourage the entry of summary judgment where both parties have had ample opportunity to explore the merits of their cases and examination of the case makes it clear that one party has failed to establish the existence of an essential element in the case, on which that party will bear the burden of proof at trial.  See Fed. R. Civ. P. 56(c).  Where the movant can show a complete failure of proof concerning an essential element of the non-moving party's case, all other facts become immaterial because there can be "no genuine issue of material fact."  In Celotex, the Court held the defendants were "entitled to judgment as a matter of law" under Rule 56(c) because the petitioner had failed to make a sufficient showing on essential elements of his case with respect to which he has the burden of proof.  Celotex, 477 U.S. at 322-323.

## V.      STANDARD OF REVIEW

Review of Petitioner's claims is governed by 28 U.S.C. § 2254(d), as amended.  Lindh v. Murphy, 117 S. Ct. 2059 (1997); Breard v. Pruett, 134 F.3d 615 (4th Cir. 1998); Green v. French, 143 F.3d 865 (4th Cir. 1998).  That statute reads:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim--(1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

To a large extent, the amendment of § 2254 shifts the focus of habeas review to the state

court application of Supreme Court law. See O'Brien v. DuBois, 145 F.3d 16 (1st Cir. 1998) ("the AEDPA amendments to section 2254 exalt the role that a state court's decision plays in a habeas proceeding by specifically directing the habeas court to make the state court decision the cynosure of federal review."). Further, the facts determined by the state court to which this standard is applied are presumed to be correct unless rebutted by the Petitioner by clear and convincing evidence. 28 U.S.C. § 2254(e)(1).

The United States Supreme Court has addressed procedure under § 2254(d). See Williams v. Taylor, 529 U.S. 362, 120 S.Ct. 1495 (2000). In considering a state court's interpretation of federal law, this court must separately analyze the "contrary to" and "unreasonable application" phrases of § 2254(d)(1). Ultimately, a federal habeas court must determine whether "the state court's application of clearly established federal law was objectively unreasonable." Id. at 1521.

## VI. PROCEDURAL BAR

Exhaustion and procedural bypass are separate theories which operate in a similar manner to require a habeas petitioner to first submit his claims for relief to the state courts. The two theories rely on the same rationale. The general rule is that a petitioner must present his claim to the highest state court with authority to decide the issue before the federal court will consider the claim.

A. Exhaustion

The theory of exhaustion is based on the statute giving the federal court jurisdiction of habeas petitions. Applications for writs of habeas corpus are governed by 28 U.S.C.§ 2254, which allows relief when a person "is in custody in violation of the Constitution or laws or treaties of the United States." The statute states in part:

(b)(1) An application for a writ of habeas corpus on behalf of a person in

custody pursuant to the judgment of a State court, shall not be granted unless it appears that

(A) the applicant has exhausted the remedies available in the courts of the State; or

(B)(I) there is either an absence of available State corrective process; or

(ii) circumstances exist that render such process, ineffective to protect the rights of the applicant.

(2)      An application for a writ of habeas corpus may be denied on the merits, notwithstanding the failure of the applicant to exhaust the remedies available in the courts of the State.

(3)      A State shall not be deemed to have waived the exhaustion requirement or be estopped from reliance upon the requirement unless the State, through counsel, expressly waives the requirement.

(c)      An applicant shall not be deemed to have exhausted the remedies available in the courts of the State, within the meaning of this section, if he has the right under the law of the State to raise, by any available procedure, the question presented.

This statute clearly requires that an applicant pursue any and all opportunities in the state courts before seeking relief in the federal court. When subsections (b) and (c) are read in conjunction, it is clear that § 2254 requires a petitioner to present any claim he has to the state courts before he can proceed on the claim in this court.

The United States Supreme Court has consistently enforced the exhaustion requirement.

The exhaustion doctrine existed long before its codification by Congress in 1948. In Ex parte Royall, 117 U.S. 241, 251 (1886), this Court wrote that as a matter of comity, federal courts should not consider a claim in a habeas corpus petition until after the state courts have had an opportunity to act . . .

Rose v. Lundy, 455 U.S. 509, 515 (1982).

In South Carolina, a person in custody has two primary means of attacking the validity of his conviction. The first avenue is through a direct appeal and, pursuant to state law, he is required to state all his grounds in that appeal, See SCAR 207 and Blakeley v. Rabon, 266 S.C. 68, 221 S.E.2d 767 (1976). The second avenue of relief is by filing an application for post-conviction relief (PCR). See S.C. Code Ann. §17-27-10 et seq. A PCR applicant is also required to state all of his grounds for relief in his application. See, S. C. Code Ann. § 17-27-90. Strict time deadlines govern direct appeal and the filing of a PCR in the South Carolina Courts. A PCR must be filed within one year of judgment, or if there is an appeal, within one year of the appellate court decision. S.C. Code Ann. § 17-27-45.

When the petition for habeas relief is filed in the federal court, a petitioner may present only those issues which were presented to the South Carolina Supreme Court through direct appeal or through an appeal from the denial of the PCR application, whether or not the Supreme Court actually reached the merits of the claim. If any avenue of state relief is still available, the petitioner must proceed through the state courts before requesting a writ of habeas corpus in the federal courts, Patterson v. Leeke, 556 F.2d 1168 (4th Cir. 1977) and Richardson v. Turner, 716 F.2d 1059 (4th Cir. 1983). However, if petitioner has failed to raise the issue before the state courts, but still has any means to do so, he will be required to return to the state courts to exhaust the claims. Rose 455 U.S. at 515.

B.      Procedural Bypass

Procedural bypass is the doctrine applied when the person seeking relief failed to raise the claim at the appropriate time in state court and has no further means of bringing that issue before the state courts. If this occurs, the person is procedurally barred from raising the issue in his federal

habeas petition. The United States Supreme Court has clearly stated that the procedural bypass of

a constitutional claim in earlier state proceedings forecloses consideration by the federal courts,

Smith v. Murray, 477 U.S. 527, 533 (1986). Bypass can occur at any level of the state proceedings

if a state has procedural rules which bar its courts from considering claims not raised in a timely

fashion. The two routes of appeal in South Carolina are described above, (i.e., direct appeal, appeal

from PCR denial) and the South Carolina Supreme Court will refuse to consider claims raised in a

second appeal which could have been raised at an earlier time. Further, if a prisoner has failed to file

a direct appeal or a PCR and the deadlines for filing have passed, he is barred from proceeding in

state court.

If the state courts have applied a procedural bar to a claim because of an earlier default in

the state courts, the federal court honors that bar. State procedural rules promote

> . . . not only the accuracy and efficiency of judicial decisions, but also the finality of
> those decisions, by forcing the defendant to litigate all of his claims together, as
> quickly after trial as the docket will allow, and while the attention of the appellate
> court is focused on his case.

Reed v. Ross, 468 U.S. 1, 10-11 (1984).

Although the federal courts have the power to consider claims despite a state

procedural bar,

> . . . the exercise of that power ordinarily is inappropriate unless the
> defendant succeeds in showing both "cause" for noncompliance with
> the state rule and "actual prejudice" resulting from the alleged
> constitutional violation.

Smith v. Murray, supra, quoting Wainwright v. Syke s, 433 U.S. at 84 (1977); see also Engle v.

Isaac, 456 U.S. 107, 135 (1982).

Stated simply, if a federal habeas petitioner can show (1) cause for his failure to raise the

claim in the state courts, and (2) actual prejudice resulting from the failure, a procedural bar can be ignored and the federal court may consider the claim. Where a petitioner has failed to comply with state procedural requirements and cannot make the required showing(s) of cause and prejudice, the federal courts generally decline to hear the claim. See <u>Murray v. Carrier</u>, 477 U.S.478, 496 (1986).

C.      Inter-relation of Exhaustion and Procedural Bypass

As a practical matter, if a petitioner before this court has failed to raise a claim in state court, and is precluded by state rules from returning to state court to raise the issue, he has procedurally bypassed his opportunity for relief in the state courts and in federal court.  A federal court is barred from considering the  filed claim (absent a showing of cause and actual prejudice). In such an instance, the exhaustion requirement is technically met and the rules of procedural bar apply. <u>Matthews v. Evatt</u>, 105 F.3d 907 (4th Cir. 1997); <u>cert.denied,</u> 118 S.Ct. 102 (1997) citing <u>Coleman v. Thompson</u>, 501 U.S. 722, 735 n. 1 (1991); <u>Teague v. Lane</u>, 489 U.S. 288,297-98 (1989); and <u>George v. Angelone</u>, 100 F.3d 353,363 (4th Cir. 1996).

D.      Cause and Actual Prejudice

The requirement of exhaustion is not jurisdictional and this court may consider claims which have not been presented to the South Carolina Supreme Court in limited circumstances. <u>Granberry v. Greer</u>, 481 U.S. 129, 131 (1987). In order to have such claims considered, a petitioner must show sufficient cause for failure to raise the claim and actual prejudice resulting from the failure, <u>Coleman v. Thompson</u>, 501 U.S. at 750, or that a "fundamental miscarriage of justice" has occurred. <u>Murray v. Carrier</u>, 477 U.S. 478 (1986). A petitioner may prove cause if he can demonstrate ineffective assistance of counsel relating to the default, show an external factor which hindered compliance with the state procedural rule, or demonstrate the novelty of a particular claim. <u>Murray v. Carrier</u>, 477

U.S. 478 (1986); <u>Clozza v. Murray</u>, 913 F.2d 1092 (4th Cir. 1990), <u>cert. denied</u>, 499 U.S. 913 (1991); and <u>Clanton v. Muncy</u>, 845 F.2d 1238 (4th Cir. 1988), <u>cert. denied</u>, 485 U.S. 1000 (1988).

Absent a showing of "cause," the court is not required to consider "actual prejudice." <u>Turner v. Jabe</u>, 58 F.3d 924 (4th Cir. 1995). However, if a petitioner demonstrates sufficient cause, he must also show actual prejudice in order to excuse a default. <u>Murray v. Carrier</u>, 477 U.S. at 492. To show actual prejudice, the petitioner must demonstrate more than plain error. He is required to prove that specific errors infected the trial and were of constitutional dimensions. <u>United States v. Frady</u>, 456 U.S. 152 (1982).

In the case of <u>Kornahrens v. Evatt</u>, 66 F.3d 1350 (4th Cir. 1995), <u>cert. denied</u> 517 U.S.1171 (1996), 116 S.Ct. 1575 (1996), the Court of Appeals stated that once a claim is determined to be procedurally barred, the court should not consider the issue on its merits. The Court noted that it is always tempting to discuss the merits as an alternative reason for a conclusion, but that once a court finds an issue to be procedurally barred, all discussion which follows is only dicta. <u>See</u> <u>Karsten v. Kaiser Foundation Health Plan</u>, 36 F.3d 8, 11 (4th Cir. 1993). Once a court has determined that a claim is procedurally barred, it should not stray into other considerations.

**VII.    ANALYSIS**[2]

**A.    Ground One**

As an initial matter, the undersigned notes that Respondent asserts that Ground One in Petitioner's Petition is procedurally defaulted in that the state supreme court did not consider the merits of any issue raised on certiorari since collateral appellate counsel filed an <u>Anders</u> Brief of

---

[2]Respondent contends that the issues raised in this habeas petition are technically exhausted.

Appellant on direct appeal. Respondent argues that the South Carolina Supreme Court in State v. Lyles, ___ S.C. ____, 673 S.E.2d 811 (2009), made clear that the state appellate court's review pursuant to Anders does not involve consideration of the merits of any issue. By this argument, Respondent appears to argue that a Petitioner cannot exhaust any claim for habeas purposes by way of an Anders brief on direct appeal. However, three District Court cases have disagreed with Respondent's argument. See Ehrhardt v. Cartledge, 2009 WL 2366095 (D.S.C. July 30, 2009); Missouri v. Beckwith, 2009 WL 3233521 (D.S.C. Sep. 29, 2009); Singleton v. Eagleton, 2009 WL 2252272 (D.S.C. July 28, 2009). Respondent presents no authority supporting its position, and the undersigned will address the claims on the merits and on Respondent's further arguments for summary judgment.

In Ground One, Petitioner asserts he was denied due process and equal protection of the laws in violation of the Fourteenth Amendment when the trial court denied his motion requesting that his birth name, Preston Devron Johnson, be used throughout the trial rather than his legal name, Abdullah Qawi Mustafa.

It appears that trial counsel for Petitioner raised the motion to exclude the use of Petitioner's Muslim name in an off-the-record hearing on the Friday before trial. 2002 Trial Tr. 16. The trial judge denied the motion because (1) Petitioner was indicted as Abdullah Qawi Mustaffa[3]; (2) Mustaffa is his legal name and had been for some time; (3) Mustaffa is his wife's legal name; (4) many witnesses knew him as "Qawi;" and (5) it was the trial judge's understanding that "he is not generally known by his name Preston Devon Johnson." 2002 Trial Tr. 16. The trial judge further

---

[3]The indictment charges "Preston Devon Johnson AKA Abdullah Qawie Mustaffa." App. pp. 800-01.

noted that it would be inappropriate to direct witnesses to take an oath before testifying and then lie about what they called Petitioner. 2002 Trial Tr. 17. The trial judge assured the parties that he would attempt to discover any potential juror bias on voir dire. 2002 Trial Tr. 18-20.

During the voir dire, the trial judge asked,

And let me share with you something that sort of comes to my mind. Mr. Johnson is also known as Abdullah Qawi Mustafa. That is a Muslim name. And I want to be honest with you, and I want you to reciprocate and be honest with me. That if, in fact, that an individual is a member of the Muslim religion or has a Muslim name, in light of the events of September 11th or since, would your feelings be such that you have some hesitation as to your ability to be fair?

2002 Trial Tr. 40. The trial judge did not require the panel to answer his question publicly, in front of the rest of the panel, but, rather, allowed them to approach him individually to address any bias against Muslims or any other concerns they might have about their ability to serve as a fair juror. 2002 Trial Tr. 40. During his ruling on Petitioner's motion, the trial judge stated that he felt this approach would result in more candor from the potential jurors. 2002 Trial Tr. 18-20. Of the potential jurors that approached the trial judge individually, only one mentioned Petitioner's religion. She stated she was familiar with the case because she knew people that worked in the Courthouse that talked about it. 2002 Trial Tr. 42. She also stated, "I'm also a Christian Jew. But that would not influence me against a Muslim." 2002 Trial Tr. 42. The potential juror was excused from service based upon her prior knowledge of the case. 2002 Trial Tr. 43. No other potential jurors indicated that they could not be impartial because of Petitioner's name or religion. 2002 Trial Tr. 41-59.

In his Response, Petitioner complains about this comment made by defense counsel during the trial judge's ruling on the Motion: "As I told you Friday, I don't like them as a group, okay. I'm

not saying I don't like him. But as a group and I ain't heard a good word about one in fourteen months." 2002 Trial Tr. 19. Defense counsel made this comment in the context of asking that the trial judge voir dire each member of the jury pool about the issue individually. 2002 Trial Tr. 19. The comment was not made in front of the jury pool. See 2002 Trial Tr. 16, l. 1-2. Petitioner also complains that, during defense counsel's opening statement he stated to the jury that Petitioner changed his name to a Muslim name in 1995, long before the events of September 11th and that being a Muslim did not have the same meaning in 1995 as it does post September 11th. He also stated that it wasn't a good time to be a Muslim and that he had not heard a good word about Muslims in the last fourteen months. 2002 Trial Tr. 90. However, Petitioner's counsel stated that Petitioner's Muslim name had nothing to do with the case and asked the jurors to remember their oath about being impartial. 2002 Trial Tr. 90-91.

The Sixth and Fourteenth Amendments to the United States Constitution guarantee a state criminal defendant the right to be tried "by a panel of impartial, indifferent jurors. The failure to accord an accused a fair hearing violates even the minimal standards of due process." Irvin v. Dowd, 366 U.S. 717, 722 (1961) (internal quotation marks omitted). Voir dire examination is a principal means of enabling the court to ensure that an impartial jury decides the case. See Mu'Min v. Virginia, 500 U.S. 415, 431 (1991) ("Voir dire examination serves the dual purposes of enabling the court to select an impartial jury and assisting counsel in exercising peremptory challenges"); Rosales-Lopez v. United States, 451 U.S. 182, 188 (1981) (plurality opinion) ("Voir dire plays a critical function in assuring the criminal defendant that his Sixth Amendment right to an impartial jury will be honored"). The trial court's decision to voir dire the jury pool regarding Petitioner's Muslim name and religion rather than exclude the use of his name altogether was not an unreasonable application

of clearly established federal law.

The district court for the Western District of Louisiana addressed a similar issue in <u>Mack v. Cain</u>, No. 07-0006, 2008 WL 1901715, (W.D.La. Jan. 25, 2008). In this § 2254 case, the petitioner argued that the district attorney improperly referred to him by his Muslim name in an effort to taint the jury only a "few months after 9/11." <u>Id.</u> at *8. The court held,

> the prosecutor had a very good reason for identifying defendant by his Muslim name during trial-one of the witnesses, Jerry Maiden, knew him only by his Muslim name. (R. 1340-1341). Further, petitioner's argument necessarily implies that 9/11 had so prejudiced the jurors that they were biased against all Muslims regardless of their race, national origin, allegiance, or non-involvement in the attacks. By the time of the May 2002 trial, some eight months had passed since 9/11, and the undersigned simply cannot ascribe such irrational prejudice to the jurors. Petitioner has not demonstrated that the prosecution's reference to his Muslim name was so prejudicial as to render his trial fundamentally unfair.

<u>Id.</u> at *9. Petitioner in the present case argues in his Response that "the responent's [sic] wanted to use this prejudicial matter to its advantage in spite on the evident fact petitioner would be convicted solely because he was a muslim." Response p. 2. Like the <u>Mack</u> court, the undersigned cannot ascribe such irrational prejudice to the jurors. Accordingly, the trial court's decision to allow the use of Petitioner's Muslim name did not render his trial fundamentally unfair and Ground One of the Petition is without merit.

### B.     Ground Two

In Ground Two, Petitioner argues that trial counsel rendered ineffective assistance by agreeing not to produce or inject evidence of third-party guilt, the toxicology report indicating cocaine in the victim's system, a broken crack pipe at the scene and cigarettes butts found at the scene.

At the PCR hearing, Petitioner argued that trial counsel failed to properly challenge SLED

employee Gallman's testimony about the report of the DNA profile developed from semen found on the victim (App. p. 723); trial counsel should have identified the fingerprints taken at the victim's house in order to determine who had been there (App. p. 731); that trial counsel failed to have hair evidence from his sweat pants analyzed (App. pp. 742-44); that trial counsel failed to have footprint evidence better investigated (App. pp. 732-34; p. 752); and that trial counsel never investigated Roger Martin's statement about seeing two cars parked outside the victim's house (App. p. 734).

Olson testified he reviewed the discovery materials and possible defenses with Petitioner and that Petitioner understood these discussions. Olson testified that the victim's blood was found on the sweatpants taken from Petitioner's home. Olson testified he did not believe that an independent DNA test would have been helpful in this case in order to identify the male DNA donor when the test had excluded Petitioner. Olson stated that Petitioner never asked him to hire a DNA expert, but that he had hired a blood spatter expert. App. pp. 692; 702-03; 705-06.

Lead trial counsel, Mr. Olson, testified that several fingerprints were found and tested and that none of them implicated Petitioner. App. p. 693. Olson did not attempt to test all these fingerprints to determine whose they were as he did not find it necessary to the case. App. pp. 693-94. Similarly, Olson testified that there were footprints in the victim's house that could not be matched, but that in his opinion, this did not "mean a whole lot." App. pp.700; 705.

Mr. Olson did not recall if there was hair found on Petitioner's sweatpants or if any tests were run on that evidence. App. p. 692. To the best of his knowledge, Olson contacted or attempted to contact all of the witnesses requested by Petitioner. App. pp. 695; 703. Olson testified that he did not recall the name of the witness (Roger Martin) who said he saw two cars outside the victim's house or whether he contacted that witness. App.p.700. Olson testified that he felt that he properly

investigated this case and that he did everything possible in his defense of Petitioner at trial. App. p.699; pp. 703-04.

Lavery testified he properly represented Petitioner on this charge and that he felt that the case was properly investigated. App. pp. 686-89. Lavery did not think that anything else could have been done in this case to assist the defense. App. p. 689.

In denying Petitioner's PCR Application, the PCR judge found that trial counsel properly investigated and presented this case at trial. App. pp.777-80.

The Sixth Amendment to the United States Constitution guarantees a defendant the right to effective assistance of counsel in a criminal prosecution. McMann v. Richardson, 397 U.S. 759, 771 n. 14, 90 S.Ct. 1441, 25 L.Ed.2d 763 (1970). In the case of Strickland v. Washington, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984), the United States Supreme Court set forth two factors that must be considered in evaluating claims for ineffective assistance of counsel. A petitioner must first show that his counsel committed error. If an error can be shown, the court must consider whether the commission of an error resulted in prejudice to the defendant.

To meet the first requirement, "[t]he defendant must show that counsel's representation fell below an objective standard of reasonableness." Strickland, 466 U.S. at 688. "The proper measure of attorney performance remains simply reasonableness under prevailing professional norms." Turner v. Bass, 753 F.2d 342, 348 (4th Cir.1985) (quoting Strickland, 466 U.S. at 688), reversed on other grounds, 476 U.S. 28, 106 S.Ct. 1683, 90 L.Ed.2d 27 (1986)). In meeting the second prong of the inquiry, a complaining defendant must show that he was prejudiced before being entitled to reversal. Strickland requires that,

[T]he defendant must show that there is a reasonable probability that, but for

counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome.

Strickland, 466 U.S. at 694. The court further held that,

[A] court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct ... the court must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professionally competent assistance.

Id. at 695.

A state court's finding on a claim of ineffective assistance of counsel is a combination of a finding of fact and a conclusion of law. Although applicable precedents may require this court under 28 U.S.C. § 2254, to make its own determination of both the performance and (if necessary) the "prejudice" components highlighted in Strickland, 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674, the historical facts decided by a court of a state in a claim of ineffective assistance of counsel remain subject to deference. See Hoots v. Allsbrook, 785 F.2d 1214, 1219 & n. 6 (4th Cir.1986) ("old" § 2254(d) standard).

The PCR judge made the following findings of fact and conclusions of law:

Petitioner failed to meet his burden of proving trial counsel were ineffective in failing to (1) properly challenge the SLED DNA analysis/report and (2) hire an independent DNA expert. App. p. 777. Both Olson and Lavery testified an independent DNA expert would not have been helpful to the case. Both attorneys testified that, as the DNA from the sweatpants and fingernail scrapings did not match the [Petitioner], it was very helpful to their case and they did not feel they needed an independent DNA Report. This Court finds this was a valid trial decision. See Roseboro v. State, 317 S.C. 292, 294, 454 S.E.2d 312, 313 (1995) (finding where trial counsel articulates a valid reason for employing a certain strategy, such conduct should not be deemed ineffective assistance of counsel). This Court further finds that, contrary to the [Petitioner's] contention, it was not necessary for trial counsel to attempt to determine the identity of the male DNA donor. The fact that the DNA report was exculpatory was the most beneficial outcome of any DNA testing. This Court further

-22-

finds Olson thoroughly and aggressively cross-examined Gallman about the findings of her report. (Trial transcript pp. 493-503).

This Court finds the [Petitioner] failed to meet his burden of proving trial counsel were ineffective in how they handled the issue of third-party guilt. This Court notes Olson and Lavery testified they presented the issue of third-party guilt. This Court has reviewed the transcript and finds this issue was argued at trial. Trial counsel, through cross-examination, attempted to show the murder could have been committed by another individual. For example, the murder weapon was a hammer allegedly taken from Caroline Reid's house (she was the [Petitioner's] girlfriend. (Trial transcript p. 273). Reid changed her story several times about the night before the murder. (Trial transcript pp. 279-302). The victim's VCR and two masks were found in the trunk of Reid's son's car. (Trial transcript pp. 231-33). In addition, trial counsel also elicited testimony that the [Petitioner's] DNA was not found under the victim's fingernails. (Trial transcript pp. 493-503). This Court finds trial counsel presented a third party guilt argument at trial.

This Court finds the [Petitioner] failed to meet his burden of proving trial counsel were ineffective in neither interviewing nor subpoenaing several witnesses. Trial counsel, specifically Olson, testified they attempted to contact all witnesses requested by the [Petitioner]. Regardless, as these alleged witnesses did not testify at the evidentiary hearing, any discussion regarding what they would have testified about at trial is purely speculative. See Bannister v. State, 333 S.C. 298, 303, 509 S.E.2d 807, 809 (1998) (the South Carolina Supreme Court "has repeatedly held a PCR applicant must produce the testimony of a favorable witness or otherwise offer the testimony in accordance with the rules of evidence at the PCR hearing in order to establish prejudice from the witness's failure to testify at trial.")

App. 778-79. In sum, the PCR court concluded that Petitioner failed to prove the first prong of the Strickland test, that is, that his trial counsel failed to render reasonably effective assistance under prevailing professional norms. App. 779. The court further concluded that Petitioner failed to prove the second prong of Strickland, that is, that he was prejudiced by trial counsel's performance. The PCR Order of Dismissal further provided that, as to any other allegations raised in the application or at the hearing and not specifically addressed in the Order, the Petitioner failed to present evidence regarding such allegations. The Court denied and dismissed any such allegations. App. 781.

The undersigned has reviewed the record and concludes that respondent's motion for

summary judgment should be granted on this issue. The record supports the PCR judge's finding that Petitioner has not demonstrated that his attorneys' performance was deficient by showing that their representation fell below an objective standard of reasonableness and, further, he has not shown that the attorneys' performance actually prejudiced him. As found by the PCR court, Petitioner's trial counsel articulated a reasonable trial strategy regarding the decision not seek further DNA testing. See Whitehead v. State, 417 S.E.2d 530, 531 (S.C.1992) (reasonable trial strategy will not be held ineffective). When considering a claim of ineffective assistance of counsel based on tactical decisions "a court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." Strickland, 466 U.S. at 689. Thus, courts are instructed not to second guess an attorney's trial strategy and tactics. Goodson v. United States, 564 F.2d 1071, 1072 (4th Cir.1977); Stamper v. Muncie, 844 F.2d 170 (4th Cir.1991).

As the PCR court's rejection of the ineffective assistance of counsel ground for relief did not result in an unreasonable application of Strickland and was not based upon an unreasonable determination of facts in light of the state court record, Petitioner's Ground Two is without merit. The state court decisions did not involve a decision that  "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." § 2254(d)(1), (2).

### C.    Ground Three

Petitioner raises third-party guilt as his third ground, arguing that "trial counsel was not

allowed to argue third-party guilt where the State relied heavily on DNA, which did not match - victim had skin under fingernails, did not match Appellate's DNA. DNA found on the inner thigh did not match - trial counsel failed to conduct an independent DNA test of various items." Petition at 9. To the extent Petitioner is arguing that the trial court erred in excluding evidence of third-party guilt, the issue is barred because it was not addressed by the PCR court. Marlar v. State, 375 S.C. 407, 653 S.E.2d 266 (2007); Humbert v. State, 345 S.C. 332, 548 S.E.2d 862 (2001); Pruitt v. State, 310 S.C. 254, 423 S.E.2d 127 (1992). Further, Petitioner has failed to establish cause or prejudice to excuse such default. Additionally, to the extent Petitioner is arguing that his counsel were ineffective in their arguments of third-party guilt, that issue is discussed above under Ground Two and, as discussed, is without merit. Thus, it is recommended that summary judgment be granted on Ground Three.

## VIII. CONCLUSION

For the reasons discussed above, Petitioner's grounds for relief are without merit and it is recommended that Respondent's Motion for Summary Judgment (Document # 17) be granted and the Petition dismissed.

 s/Thomas E. Rogers, III          
Thomas E. Rogers, III
United States Magistrate Judge

February 9, 2010
Florence, South Carolina

**The parties are directed to the important information on the following page.**